# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**STANLEY W. COFFIN, JR.,**

        **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　　　**Case No.  6:09-cv-2061-Orl-DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

## MEMORANDUM OPINION & ORDER

Plaintiff was previously was found disabled and entitled to Supplemental Security Income ("SSI") and disability benefits.  His disability benefits were terminated due to work activity in 2004, and he was subsequently found to be no longer entitled to SSI benefits as of May 1, 2007.  Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) terminating his SSI benefits and denying Plaintiff's disability application.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.  Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **REVERSED** and **REMANDED.**

### *I. BACKGROUND*

**A.**     **Procedural History**

Plaintiff was previously was found disabled as of November 1, 1990 and entitled to SSI and disability benefits.  He was subsequently terminated from disability benefits due to work activity in 2004 but he was not terminated from SSI benefits.  His SSI file was lost and no basis was established

to terminate his SSI, therefore SSI continued. R. 11, 62. Plaintiff filed a new application for disability benefits in September 2005 with an alleged onset date of September 17, 2005. His application for disability benefits was denied. He filed for disability benefits again on December 18, 2006 with an alleged onset date of November 15, 2005.

On May 1, 2007, the Social Security Administration determined that Plaintiff was no longer entitled to SSI benefits as of May 1, 2007. R. 11. Plaintiff requested a hearing, which was held on March 26, 2009 before Administrative Law Judge ("ALJ") Gerald Murray; the ALJ considered both Plaintiff's December 18, 2006 disability benefits application and whether SSI should continue. R. 11, 21, 360-91. Plaintiff was not represented at the hearing by counsel. R. 11. In a decision dated May 15, 2009, the ALJ found Plaintiff not disabled as defined under the Act since November 15, 2005 through the date of decision. R. 21. With respect to Plaintiff's SSI, the ALJ found that as of May 1, 2007, Plaintiff had experienced medical improvement that related to his ability to work, he was not disabled as of that date, and he did not become disabled again since that date. R. 15-21. Plaintiff timely filed a Request for Review of the ALJ's decision, and the Appeals Council denied Plaintiff's request on October 16, 2009. R. 4. Plaintiff filed this action for judicial review on December 8, 2009. Doc. No. 1.

### B. Medical History and Findings Summary

Plaintiff was 38 years of age on the date of the ALJ's decision. R. 20. He has a high school education and past work experience as a security guard, case manager, parking lot attendant and a janitor. R. 20.

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of carpal tunnel syndrome, neck pain, arthritis, depression, knee problems, anxiety, panic attacks, bipolar disorder, and a history of learning disabilities in math. R. 22-24, 90-91, 114, 135, 383. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found

that as of November 15, 2005, Plaintiff suffered from bipolar disorder, carpal tunnel syndrome, right wrist, right knee pain, left elbow pain, and cervical strain which were "severe" medically determinable impairments, but did not meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 15.

The ALJ determined that Plaintiff retained the residual functional capacity (RFC) as of November 15, 2005 to perform light work which was simple, routine, repetitive work, but he would need limited contact with the public, coworkers and supervisors; he continued to have the same RFC as of May 1, 2007, when he was terminated. The ALJ found that, commencing on November 15, 2005, Plaintiff was capable of performing his past work as a security guard, parking lot attendant and case manager. Thus, the ALJ found that with regard to Plaintiff's DIB application, Plaintiff was not disabled as of November 15, 2005, and with regard to Plaintiff's claim of continuing disability under SSI, his disability ended as of May 1, 2007, and he had not become disabled again. R. 21.

Plaintiff now asserts four points of error. First, he argues that the ALJ erred in failing to make specific findings as to the mental requirements of Plaintiff's past work as a security guard, parking lot attendant, or case management eligibility worker even though the ALJ admitted that Plaintiff was limited to simple, routine, repetitive work and also could only have limited contact with the public, coworkers and supervisors. Second, he claims the ALJ erred in his alternative finding that Plaintiff was not disabled based on a mechanical application of the Medical Vocational Guidelines ("Grids"), arguing this was also error due to the Commissioner's own finding that Plaintiff was limited to simple, routine, repetitive work and could only have limited contact with the public, coworkers, and supervisors, which precluded mechanical reliance on the Grids without vocational expert testimony. Third, Plaintiff contends the ALJ erred in failing to assign any upper extremity limitations to Plaintiff despite the state agency physician's opinion that he would have upper extremity limitations; the medical evidence supporting increasing carpal tunnel symptoms in his right dominant upper extremity

-3-

leading to surgery in April 2007; and the lack of any updated evidence as to his status after his surgery. Fourth, Plaintiff argues that the ALJ erred in barely addressing the mental impairment evidence confirming Plaintiff's significant mental health impairments. For the reasons that follow, the decision of the Commissioner is **REVERSED** and **REMANDED**.

## *II.  STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

In this case, the main issue is whether Plaintiff's disability ended or he continues to be disabled as defined under the Social Security Act. When deciding whether a claimant's disability continues, the Commissioner must determine if there has been medical improvement in the claimant's impairment since the most recent favorable decision, and if so, whether the medical improvement is related to the ability to work. 20 C.F.R. § 416.994(a). If a claimant's medical improvement is related to the ability to do work, the Commissioner must determine whether the claimant is able to engage in substantial gainful activity. *Id*. Medical improvement is any decrease in the medical severity of the impairment which was present at the time of the most recent favorable decision. 20 C.F.R. § 416.994(b)(1). The standard requires a comparison of a claimant's condition from the time of the most recent favorable decision with his current medical severity. *Id*. A determination that there has been a decrease in medical severity must be based on changes in symptoms, signs, and laboratory findings. 20 C.F.R. § 416.994(b)(1), (c)(1). A claimant's medical improvement must also be related to the ability to work. 20 C.F.R. § 416.994(b). Medical improvement related to the ability to work is present when there is medical improvement and an increase in functional capacity to do basic work activities. 20 C.F.R. § 416.994(b)(3).

The ALJ must also follow five steps for determining whether an individual is disabled. *See* 20 C.F.R. § § 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent his from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work)

prevent his from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f).

## *III. ISSUES AND ANALYSIS*

### A. Past relevant work and mental requirements

Plaintiff contends that the ALJ erred in failing to make specific findings as to the mental requirements of Plaintiff's past work as a security guard, parking lot attendant, or case management eligibility worker even though the ALJ limited Plaintiff to simple, routine, repetitive work and limited contact with the public, coworkers and supervisors. The Commissioner argues that the record as a whole shows that the ALJ properly determined Plaintiff's RFC in finding that Plaintiff could do a range of light work, and based on this RFC, that he could do his past relevant work as a security guard,

parking lot attendant, and case manager as generally and actually performed. Doc. 18 (citing R. 20).

The ALJ determined that Plaintiff had the RFC to perform light work except that Plaintiff was limited to simple, routine, repetitive work; and he could only have limited contact with the public, co-workers and supervisors. R. 17. The ALJ went on to find that beginning on November 15, 2005, based on his residual functional capacity, Plaintiff was able to perform his past relevant work as a security guard, parking lot attendant, case manager as generally and actually performed. R. 19-20.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d),

416.927(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

      The Commissioner contends that ALJ properly evaluated the demands of Plaintiff's past work as required under SSR 82-62, including his mental limitations.  The Commissioner argues that SSR 82-62 requires that a claimant be the primary source for vocational documentation regarding the actual

demands of his past work and his statements are generally sufficient for determining the demands of a claimant's past work, thus the ALJ could rely on Plaintiff's statements in two job report forms from the SSA that his parking attendant job involved only parking cars for auctions and required no writing, and his security guard jobs required him to patrol grounds and sites and involved only the completion of some log reports.  R. 103-08, 118-26.  Therefore, (the Commissioner further argues) these "job descriptions fall well within the ALJ's finding that Plaintiff could do simple, routine, repetitive work with limited contact with the public, co-workers, and supervisors" and "the ALJ's finding that Plaintiff could do his past work as 'he actually performed it' indicates the ALJ considered these descriptions."  Doc. 18 at 16 (citing R. 17 and R. 20).

      General principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ. *See SEC v. Chenery Corp.,* 318 U.S. 80, 93-95, 63 S.Ct. 454, 87 L.Ed. 626 (1943); *Steele,* 290 F.3d at 941; *Golembiewski*

*v. Barnhart,* 322 F.3d 912, 916 (7th Cir. 2003); *Pinto v. Massanari,* 249 F.3d 840, 847-48 (9th Cir. 2001); *Fargnoli v. Massanari,* 247 F.3d 34, 44 n. 7 (3d Cir. 2001).

In addition, as Plaintiff argues, the ALJ failed to make any findings regarding the mental requirements of Plaintiff three past work occupations in contradiction of the requirements of SSR 82-62.  SSR 82-62[1] requires:

> In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific findings of fact:
> 1. A finding of fact as to the individual's RFC.
> 2. A finding of fact as to the physical and *mental demands* of the past job/occupation.
> 3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

SSR 82-62, 1982 WL 31386, at *4.  The only findings that the ALJ made regarding Plaintiff's three past work occupations was that those jobs are semi-skilled and skilled in nature, which would seem to contradict the ALJ's finding that Plaintiff must be limited to simple, routine, and repetitive tasks. As Plaintiff appropriately argues, SSR 82-62 also specifically requires that for a claim involving a mental/emotional impairment, "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, *e.g.*, speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work," and in this case, the ALJ did not examine any of these issues regarding Plaintiff's past work.

In the ALJ's decision, there is no discussion whatsoever of the mental criteria required of Plaintiff's past relevant work, and the ALJ focused solely on the physical exertional level and the semi-skilled/skilled nature of the past work.  In this case in which Plaintiff's mental impairments and limitations were at least in part the basis for the initial disability decision in 1990 finding him to be

---

[1]http://www.ssa.gov/OP_Home/rulings/di/02/SSR82-62-di-02.html.

disabled[2] (R. 127), the ALJ should have determined the mental requirements of Plaintiff's past relevant work and whether with his current mental limitations related to his bipolar disorder – limiting him to simple, routine, repetitive work and limited contact with others (R. 17) – he could perform the past relevant work. *See Nimick v. Secretary of HHS*, 887 F.2d 864, 866 (8th Cir. 1989) (the SSA regulations anticipate that the ALJ will consider the claimant's RFC and the physical and mental demands of the work the claimant has done in the past in deciding if he can return to past relevant work).

Particularly since, as the medical records reflect, Plaintiff had trouble concentrating, was paranoid, and he was fired from his last security job in 2005 because he could not remember how to go to checkpoints (R. 327-29), there is at least some doubt raised as to his ability to perform that job "as actually performed," *i.e.*, insufficiently to keep it. Plaintiff testified that he could not perform his past work because he had trouble following instructions, reading comprehension and understanding, and some of his biggest difficulties were his problems with social functioning (bipolar disorder) and also just being able to function at times; he testified that his symptoms had worsened. R. 373, 384-87. Plaintiff also points to § 404.1545C of the SSA regulations which provides that "[a] limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting, may reduce [a claimant's] ability to do past work and other work." The ALJ assigned RFC limitations that Plaintiff would need limited contact with the public, coworkers and supervisors; yet, the ALJ neglected to evaluate the mental requirements of Plaintiff's past work and factor in Plaintiff's RFC mental limitations and social functioning. As an example of this omission in the ALJ's decision, the ALJ ignored evidence that Plaintiff had quit prior employment "because of the

---

[2]Plaintiff was hospitalized in 1989 with one episode of decompensation. R. 299.

-9-

way I was being treated by my co-workers as soon as people caught wind of my disability my co-workers harassed me," which would appear to support the ALJ's limitation of "limited contact with co-workers" yet would not have been possible in the security work as Plaintiff described he performed it. R. 125. Additionally, Plaintiff's description on his case "management" position for a county in New York sounds like it was a special program: "[I]t took people that were already in the community support system in New York and gave them a job to work along side the professional case managers. It was a program that they came up with." R. 371.

Because the ALJ failed to assess the mental requirements of Plaintiff's past relevant work before finding that he could return to it with current his mental impairment and limitations, the ALJ's decision was not based on substantial evidence. *See Nimick,* 887 F.2d at 866-67 (reversing and remanding where the evidence contained in the record regarding the physical and mental demands required of claimant's past work as performed was totally deficient, and there was no evidence that the ALJ solicited any evidence as to the functional demands and job duties of the occupation as generally required by employers throughout the national economy)[3]. In *Nelms v. Bowen*, the Eleventh Circuit, in a per curiam opinion, ruled:

> In the absence of evidence of the physical requirements and demands of appellant's work the ALJ could not properly determine that she retained the residual functional capacity to perform it.
>
> The record as it stands is insufficient to affirm, but it is also lacking in evidence to support a finding that appellant is totally disabled. The ALJ was obliged to develop a full and fair record.
>
> The cause must be remanded under 42 U.S.C. § 405(g) for a further hearing with regard to the physical demands of appellant's past work and her ability to perform the same in light of her impairments.

---

[3]The Commissioner criticizes Plaintiff's reliance on *Nimick*, an Eighth Circuit decision, as "non-controlling"; however, it is persuasive authority applying the SSA regulations which apply to all claimants. *Nimick* is certainly in accord with the other case cited by Plaintiff, *Nelms*, which is an Eleventh Circuit case and "controlling" or precedential.

-10-

*Nelms v. Bowen,* 803 F.2d 1164, 1165 (11th Cir. 1986) (citations omitted)

In this case, Plaintiff's case must be remanded for a further hearing to determine the mental demands of Plaintiff's past work[4] and his ability to perform them in light of all of his impairments, physical and mental. The ALJ may satisfy this requirement by eliciting the opinion of a vocational expert regarding the requirements of the occupations in relation to the abilities of Plaintiff. *See Savor v. Shalala*, 868 F.Supp. 1363, 1354 (M.D. Fla. 1994) (affirming ALJ's decision where he relied on the opinion of the vocational expert regarding claimant's capacity to perform past relevant work as part of decision finding claimant not disabled).

### B. Application of the Grids in the ALJ's alternative finding

In finding that Plaintiff was no longer disabled as of November 15, 2005, the ALJ found (in the alternative) that Plaintiff had the RFC to perform the full range of light work under the Grids. Plaintiff contends that non-exertional mental and social functioning limitations precluded the ALJ's mechanical reliance on the Grids without testimony from a VE. The Commissioner does not seriously argue to the contrary, but instead argues that "any deficiencies in the step five finding are no more than harmless error" because "the ALJ was not even required to make this alternate finding at step five.' Doc. 18. In this particular case, in which the Court has found that the ALJ's step four finding (regarding past work) is not based on substantial evidence, the Court must also determine whether the alternative finding was based on substantial evidence.

If the ALJ finds that a claimant cannot return to his prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *Foote*, 67 F.3d at 1558. In determining whether the Commissioner has met this burden,

---

[4] The Commissioner's argument that Plaintiff's answers to the SSA form 3369 were sufficient to describe the requirements of his past work is unavailing as the form does not solicit information on the mental requirements, only physical or exertional requirements of his past work. R. 102-09, 118-26.

-11-

the ALJ must develop a full record regarding the vocational opportunities available to a claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the "Grids." *Foote*, 67 F.3d at 1558. Exclusive reliance on the "Grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e); *Foote*, 67 F.3d at 1559; *Heckler v. Campbell*, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." *Walter v. Bowen*, 826 F.2d 996, 1002-3 (11th Cir. 1987). In almost all of such cases, the Commissioner's burden can be met only through the use of a VE. *Foote*, 67 F.3d at 1559. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a VE to establish whether the claimant can perform work which exists in the national economy. In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations. *Foote*, 67 F.3d at 1559.

At step five, the ALJ found that Plaintiff had the RFC to perform the full range of light work based on the Grids because the additional limitations he assigned – that Plaintiff is limited to simple, routine, repetitive work and could only have limited contact with the public, coworkers, and supervisors – had little or no effect on the occupational base of unskilled light work. R. 20. Plaintiff argues that "simple, routine, repetitive work and limitations on contact with supervisors, coworkers and the public" are limitations which have been found by other courts to erode the unskilled light

work occupational base, therefore, the ALJ should have elicited testimony from a VE rather than rely on the Grids. *See* Doc. 17 at 13-17.

Plaintiff cites *Vuxta v. Commissioner of Social Security,* which held that a nonexertional limitation to simple tasks (with an exertional RFC for light work) is already contained within the "unskilled" limitation of 20 C.F.R. § 404.1568(a)[5]; however, a limitation to *repetitive* tasks is not contained within the definition of unskilled in the section, and the ALJ having not addressed it, the Eleventh Circuit remanded the decision to the ALJ to make a determination whether such limitation would erode the occupational base. 194 Fed.Appx. 874, 878, 2006 WL 2578705, 3 (11th Cir. Sept. 8, 2006). The Commissioner argues that *Vuxta* does not apply because, in somewhat circular reasoning, the ALJ stated Plaintiff's "additional limitations had little or no effect on the occupational base of unskilled light work," thus, the ALJ was entitled to rely on the Grids, and no additional explanation from the ALJ was required. Doc. 18 at 18. Here, as in *Vuxta*, remand is necessary for the ALJ to provide some explanation or analysis as to whether a limitation to *repetitive* and *routine* tasks, which are not within the definition of "unskilled," would preclude a wide range of work at the light level and obtain (if necessary) VE testimony[6].

Plaintiff also argues that the social functioning limitations imposed by the ALJ–limited contact with the public, coworkers and supervisors–would erode the unskilled light occupational base.

---

[5]20 CFR § 404.1568 reads in pertinent part:
(a) Unskilled work. Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, we consider jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs.
20 CFR § 404.1568(a).

[6]Based on the Court's disposition of this issue, it does not reach Plaintiff's arguments concerning "reasoning level" from the Dictionary of Occupational Titles and "simple, routine, repetitive tasks" though the ALJ is free to examine the issue with the VE (if necessary).

-13-

Plaintiff cites Judge Wilson's reasoning in *Millhouse v. Astrue*, where he criticized the ALJ restricting the plaintiff simply to "unskilled work" even though the ALJ had limited the plaintiff to "simple, routine jobs" and "no frequent contact with the public":

> In this case, assuming that the law judge properly evaluated the severity of the plaintiff's mental impairment at step two and concluded that she had moderate limitations in concentration, persistence, or pace and in social functioning, those findings could not reasonably yield a mental RFC of only a restriction to unskilled work. In the first place, that determination of the mental RFC does not comply with Social Security Ruling 96-8p. Simply finding that the plaintiff had a mental limitation of unskilled work clearly does [sic] constitute "a more detailed assessment by itemizing various functions contained in the broad categories" of social functioning and concentration, persistence, or pace. Id. at *4.
>
> Furthermore, moderate limitations in social functioning and concentration, persistence, or pace constitute greater restrictions than a limitation to unskilled work. "Unskilled work" is defined in the regulations as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. 416.968(a). It is not apparent to me that a person with a moderate limitation in concentration, persistence, or pace could adequately perform all types of unskilled sedentary work. Accordingly, the law judge's contrary conclusion needed a reasonable explanation.
>
> In all events, a restriction to unskilled work plainly does not cover a moderate limitation in social functioning. This circumstance establishes that there is an unacceptable inconsistency between the law judge's finding of mental limitations at step two and her finding of the plaintiff's mental RFC. And there is no apparent basis for thinking that error is harmless.

Case No. 8:08cv378-T-TGW, 2009 WL 763740 at *3 (M.D. Fla. Mar.23, 2009). Equally applicable in this case, the ALJ should not have found that a restriction to "unskilled" work sufficiently accounted for the limitation he assigned to Plaintiff, with limited of contact with the public, coworkers, and supervisors.

The Commissioner argues that because the ALJ referenced "SSR 85-15[7]," which states that unskilled work ordinarily involves dealing primarily with objects rather than with data or people, this reference supports his determination in a subsequent paragraph that the social functioning limitations

---

[7]http://www.ssa.gov/OP_Home/rulings/di/01/ SSR-85-15-di-10.html.

would have little or no effect on the occupational base of unskilled light work. The ALJ did cite SSR 85-15, however it was for the proposition if the claimant has solely non-exertional limitations, the ALJ can use the Grids – which Plaintiff does not dispute. The ALJ did not cite SSR 85-15 again, or in discussing Plaintiff's limitations in social functioning. Moreover, the ALJ's limitation of Plaintiff to "unskilled" work does not fully account for Plaintiff's limitations in social functioning and the ALJ's decision was not based on substantial evidence in this regard.

### C. Other issues raised by Plaintiff

Plaintiff argues the ALJ's decision does not contain much detail as to why exactly the ALJ finds that Plaintiff's condition improved as of 2005 and that he was not disabled as of 2007. Plaintiff specifically argues that the ALJ erred in failing to assign any upper extremity limitations to Plaintiff despite (1) the state agency physician's opinion that he would have upper extremity limitations; (2) the medical evidence supporting increasing carpal tunnel symptoms in his right dominant upper extremity leading to surgery in April 2007; and (3) the lack of any updated evidence as to his status after his surgery. Dr. Barber, the consultative examiner found decreased range of motion in the upper extremities, back, and lower extremities due to pain and tight muscles and opined that Plaintiff could be limited in standing for long periods of time due to decreased range of motion in the upper and lower extremities and in his back. R. 156-162. Plaintiff testified at the hearing that he suffered from permanent carpal tunnel syndrome in his right wrist and the surgery in 2007 did not work. R. 377. On remand, the ALJ will obtain Plaintiff's updated medical records – from Dr. Bryan and/or Dr. Kolluri at a minimum – and an updated consultative examination from a neurologist or other specialist qualified to treat carpal tunnel syndrome.

Plaintiff also contends that the ALJ erred in failing to address Plaintiff's mental health evidence, other than a single consultative examination in December 2005. Plaintiff contends that the ALJ failed to discuss any of the evidence from Plaintiff's treating psychiatrists at the East Coast

Center of Psychiatry (R. 313-333) where Plaintiff was treated for his bipolar condition, even though it such evidence was directly probative as to whether Plaintiff's bipolar condition improved during the relevant time period. Based on these records as a whole, the Court has doubts as to whether, as the ALJ found, Plaintiff's treatment was "minimal" and his prescribed medications controlled his symptoms (R. 19) given that his psychotropic medication dosage was being adjusted or increasing by his treating psychiatrists. *See* R. 315-19 (adding Trazadone and increasing Seroquel at several visits, and continuing lithium). The lack of the ALJ's specific citation to Plaintiff's mental health treatment records and the lack of any discussion whatsoever of these records is an oversight that the ALJ will correct on remand.

### *IV. CONCLUSION*

The ALJ erred (1) in failing to assess the mental requirements of Plaintiff's past relevant work before finding that he could return to it and (2) in relying on the Grids in light of Plaintiff's non-exertional impairments. On remand, the ALJ will determine the mental requirements of Plaintiff's past relevant work, whether he could return to it, and, if not, take the testimony of the VE in determining if there is other work in the national economy that Plaintiff could perform.

Also on remand, the ALJ will obtain Plaintiff's updated medical records – from Dr. Bryan and/or Dr. Kolluri at a minimum – and an updated consultative examination from a neurologist or other specialist qualified to treat carpal tunnel syndrome; the ALJ will also obtain Plaintiff's update mental health treatment records and discuss these records in any future decision.

Accordingly, the Court **REVERSES** and **REMANDS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

-17-

**DONE** and **ORDERED** in Orlando, Florida on March 2, 2011.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record